UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN DALTON,<br><br>    Plaintiff,<br><br>    v.<br><br>J. MANN INC.,<br><br>    Defendant. | Case No. 16-cv-03409-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 9 |

Plaintiff Bryan Dalton has filed suit against his former employer, J. Mann, Inc., doing business as Ecothrift Vallejo ("Ecothrift"), asserting that he was improperly terminated in violation of the federal Family Medical Leave Act ("FMLA") and related state law. Currently pending before the Court is Ecothrift's petition to compel arbitration and stay proceedings. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to compel arbitration and stay proceedings.

## I.    FACTUAL & PROCEDURAL BACKGROUND

In his complaint, Mr. Dalton alleges as follows.

Mr. Dalton began his employment with Ecothrift in 2002 as a manager-in-training. *See* Compl. ¶ 5. Ultimately, he became a store manager and "grew the business from $2 million per year to $4.5 million per year." Compl. ¶ 5.

In the fall of 2015, "the physical condition of both of Mr. Dalton's elderly parents significantly deteriorated," and "Mr. Dalton assumed the role of caregiver." Compl. ¶ 7. Mr. Dalton took vacation time so that he could provide care for his parents and then asked for, and received, FMLA leave. Mr. Dalton was "set to return . . . to work [from FMLA leave] on February 1, 2016." Compl. ¶ 7. On January 28, 2016, while still on FMLA leave, Mr. Dalton

1  received a phone call from Ecothrift's CEO, Phyl Clempson.  She informed him that his
2  employment was being terminated.  *See* Compl. ¶ 9.  The only reason she gave Mr. Dalton was:
3  "'This just isn't working out.'"  Compl. ¶ 9.
4  Based on, *inter alia*, the above allegations, Mr. Dalton has asserted three claims: (1)
5  violation of the FMLA; (2) violation of the California Family Rights Act ("CFRA"); and (3)
6  wrongful termination in violation of public policy.
7  Shortly after Mr. Dalton filed suit, Ecothrift filed the currently pending motion.
8  Ecothrift's motion is based on an arbitration provision contained in the employment agreement
9  that Mr. Dalton signed when he was first hired in 2002.  A copy of the employment agreement can
10 be found as Exhibit A to the Clempson declaration.
11 The employment agreement is a four-page document.  On page 2 of the agreement, there is
12 a section on arbitration.  It provides (in its entirety) as follows:

> **5.     ARBITRATION.**  Any dispute with the Company regarding the terms and conditions of Employee's hiring, employment, or termination shall be subject to binding arbitration to the maximum extent allowed by law, under terms and conditions which the parties may mutually agree upon, or if they are unable to agree, then pursuant to the Arbitration rules and process established by law at California [C]ode of Civil Procedure Section 1280 et. seq.

17 Clempson Decl., Ex. A (Empl. Agmt. ¶ 5).
18 On page 4 of the employment agreement (the last page of the agreement), there is the
19 following provision that also mentions arbitration:

> **DECLARATION OF EMPLOYEE**
>
> I, the undersigned employee, hereby declare under penalty of perjury under the laws of the State of California that I read this Employment Agreement, that I understand I will be an At-Will Employee; and that I am required to take immediate steps to complaint if I feel I am the subject of unlawful discrimination, sexual harassment, or illegal activity.  I also acknowledge the Company's trade secrets, and promise to maintain their confidentiality.  I also understand any employment dispute will be subject to binding arbitration.

26 Clempson Decl., Ex. A (last page of employment agreement).  Mr. Dalton signed the declaration.
27 Ms. Clempson then provided her signature as a witness and company representative.

**DECLARATION OF WITNESS [AND COMPANY REPRESENTATIVE]**

I, the undersigned witness [and Company representative], hereby declare under penalty of perjury under the laws of the State of California, that I witnessed the above Employee read this Employment Agreement, and heard said Employee affirm that said Employee had read and understood the Agreement including the Declaration of Employee above.

Clempson Decl., Ex. A (last page of employment agreement).

## II.   DISCUSSION

A.   Federal Arbitration Act or California Arbitration Act

As a preliminary matter, the Court notes that neither party directly addresses whether this motion should be governed by the Federal Arbitration Act ("FAA") or the California Arbitration Act ("CAA").[1]  Presumably, the parties have not broached this issue because application of one act over another would not dictate a different resolution of the pending motion. *See, e.g.*, 9 U.S.C. § 2 (providing that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract [or] transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"); Cal. Code of Civ. Proc. § 1281 (providing that "[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract").  The Court agrees that which act applies does not appear material in this case.

B.   Unconscionability

In his papers, Mr. Dalton does not dispute that his lawsuit formally falls within the scope of the arbitration provision in the employment agreement.  Rather, Mr. Dalton's arguments against arbitration are based on unenforceability, more specifically, based on unconscionability.  Mr. Dalton has the burden of proving unconscionability. *See Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("The party seeking arbitration bears

---

[1] Ecothrift's motion makes reference to both acts.  Mr. Dalton does not discuss either act.

3

1  the burden of proving the existence of an arbitration agreement, and the party opposing arbitration
2  bears the burden of proving any defense, such as unconscionability.").
3  Under California law,

> [u]nconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.[2]  Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be "so one-sided as to 'shock the conscience.'"

*Id.* Even though "[b]oth procedural and substantive unconscionability must be present before a contract or term will be deemed unconscionable," they "need not be present to the same degree. A sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 178 (2015) (internal quotation marks omitted).

### 1. Procedural Unconscionability

Mr. Dalton argues procedural unconscionability because (1) the employment agreement was a contract of adhesion (*i.e.*, he had no opportunity to negotiate or refuse to sign the contract or the specific arbitration provision contained therein); (2) the arbitration provision did not convey in any way that he was thereby giving up his right to a jury trial; and (3) he was never given a copy of the applicable arbitration rules.

#### a. Contract of Adhesion

Regarding (1), the employment does appear to be a contract of adhesion – *i.e.*, "a standardized contract that is imposed and drafted by the party of superior bargaining strength and relegates to the other party only the opportunity to adhere to the contract or reject it." *Higgins v. Superior Court*, 140 Cal. App. 4th 1238, 1248 (2006) (internal quotation marks omitted). There

---

[2] Contrary to what Ecothrift argues, "[p]rocedural unconscionability requires *either* oppression or surprise. Both are not required." *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 243 (2016) (emphasis added; internal quotation marks omitted).

4

was no right to opt out of arbitration. The adhesive nature of the employment contract does support oppressiveness and is enough to satisfy the procedural unconscionability requirement, although "'[w]here there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" *Colvin v. NASDAQ OMX Grp., Inc.*, No. 15-cv-02078-EMC, 2015 U.S. Dist. LEXIS 149932, at *11 (N.D. Cal. Nov. 4, 2015) (quoting *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 796 (2012)); *see also Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (stating that "California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree"); *Mikhak v. Univ. of Phx.*, No. C16-00901 CRB, 2016 U.S. Dist. LEXIS 80705, at *27-28 (N.D. Cal. June 21, 2016) (stating that "[t]he arbitration clause here is at least somewhat procedurally unconscionable due to its oppressive nature"; adding that, [b]ased on the slightly oppressive nature of the adhesive agreement, the Court finds a minimal amount of procedural unconscionability").

### b. Waiver of Right to a Jury Trial

As for (2), it is true that the arbitration provision does not spell out precisely what arbitration means – including the fact that there will be no jury trial. Mr. Dalton argues that this is especially problematic because a waiver of a constitutional right such as a right to a jury trial must be knowing and voluntary. In a declaration, Mr. Dalton asserts in conclusory terms: "By signing the employment agreement, I did not understand that I was waiving my right to a jury trial. I did not knowingly or voluntarily waive my right to a jury trial." Dalton Decl. ¶ 4.

The Court acknowledges that, in *Wisdom v. AccentCare, Inc.*, 202 Cal. App. 4th 591 (2012), the state court found procedural unconscionability based in part on

> [n]o one call[ing] attention to the arbitration agreement [in the application for employment], and no one explain[ing] that it would result in a waiver of the right to trial. Plaintiffs did not know what binding arbitration meant. Thus, the employees' reasonable expectation that they were entitled to a trial to determine their legal rights with respect to their employment was disregarded.

*Id.* at 598 (also stating that "[t]here was no evidence any of the plaintiffs were sophisticated in

5

1  legal matters"). However, *Wisdom* was superseded by a grant of review, *see Wisdom v.*
2  *Accentcare, Inc.*, No. S200128, 2012 Cal. LEXIS 2935 (Cal. Sup. Ct. Mar. 28, 2012); no
3  California Supreme Court decision ultimately issued because the case subsequently settled. *See*
4  *Wisdom v. Accentcare, Inc.*, No. S200128, 2013 Cal. LEXIS 6229 (Cal. Sup. Ct. July 24, 2013).

In addition, at least some federal courts have not been troubled by similar circumstances. For example, in *Cooper v. MRM Investment Co.*, 367 F.3d 493 (6th Cir. 2004), the Sixth Circuit noted as follows:

> This Court . . . has flatly rejected the claim that an arbitration agreement must contain a provision expressly waiving the employee's right to a jury trial. Without discussion, we stated, "As to the failure of the arbitration clause to include a jury waiver provision, 'the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.'" The Seventh Amendment confers not the right to a jury trial per se, but rather "only the right to have a jury hear the case *once it is determined that the litigation should proceed before a court*. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes."

*Id.* at 506 (emphasis added); *see also Sydnor v. Conseco Fin. Serv'g Corp.*, 252 F.3d 302, 307 (4th Cir. 2001) (noting that "the right to a jury trial attaches in the context of judicial proceedings after it is determined that litigation should proceed before a court[;] [t]hus, the 'loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate'"). In other words, under the *Cooper* analysis, a court need not worry about the knowing and voluntary waiver standard because that standard only kicks in when there is supposed to be court litigation in the first place.[3]

Here, the Court need not decide whether *Cooper* and/or the other above-cited cases were correctly decided. Even assuming waiver of a right to trial which is not knowing constitutes a

---

[3] Some courts have seemed to go even further than the *Cooper* court, although these are older opinions. *See Pierson v. Dean, Witter, Reynolds*, 742 F.2d 334, 339 (7th Cir. 1984) (stating that, "though *perhaps* not contemplated by the Piersons when they signed the contract, loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate") (emphasis in original); *Madden v. Kaiser Found. Hosps.*, 17 Cal. 3d 699, 714 (1976) (stating that, "[w]hen parties agree to submit their disputes arbitration they select a forum that is alternative to, and independent of, the judicial – a forum in which, as they well know, disputes are not resolved by juries[;] [h]ence there are literally thousands of commercial and labor contracts that provide for arbitration but do not contain express waivers of jury trial").

form of procedural unconscionability, the totality of the circumstances in this case does not support Mr. Dalton's claim that his waiver was unknowing and involuntary. *See Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 384 (6th Cir. 2005) (stating that "to evaluate whether a plaintiff has knowingly and voluntarily waived his or her right to pursue employment claims in federal court, the following factors must be evaluated: (1) plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances"). Here, all that Mr. Dalton has submitted for the Court's consideration is the language of the arbitration provision (which does not mention the waiver of a right to a jury trial) and his conclusory declaration that he did not understand that he was waiving his right to a jury trial. The Court gives little weight to Mr. Dalton's conclusory declaration, particularly given (1) the absence of other facts such as what education level he has reached and (2) the "employee declaration" that Mr. Dalton signed at the end of the employment agreement, which specifically stated: "I also *understand* any employment dispute will be subject to binding arbitration." Clempson Decl., Ex. A (last page of employment agreement) (emphasis added). At the very least, the Court concludes that any procedural unconscionability, under the facts presented here, is modest.

        c.      <u>Copy of Arbitration Rules</u>

Finally, regarding (3) – *i.e.*, the fact that Mr. Dalton was never given a copy of the applicable arbitration rules – that supports at most minimal procedural unconscionability. *See Carbajal*, 245 Cal. App. 4th at 244-45 (noting that the failure to provide a copy of the governing rules "contributes to oppression because the employee is forced to go to another source to find out the full import of what he or she is about to sign – and must go to that effort *prior* to signing")[4] (emphasis in original; internal quotation marks omitted). Notably, the cases cited by Mr. Dalton

---

[4] Even in *Carbajal*, the court ultimately found only "a moderate level of procedural unconscionability based on [the contract's] adhesive nature, the employment context in which it arose, its failure to identify the governing AAA rules, and CW Painting's failure to provide Carbajal with a copy of the governing rules or the opportunity to review any rules before she was required to sign the Agreement").

7

involve the arbitration rules of third-party organizations which are not obviously publicly available. Here, the only rules that may be applicable (and only if the parties cannot agree) are found in the California Code of Civil Procedure, which are obviously publicly available and which do not raise the same concerns related to potential unfairness given that they were passed by the California legislature. *Cf. also id.* at 245 (noting that "[t]he level of oppression is increased when . . . the employer not only fails to provide a copy of the governing rules, but also fails to clearly identify which rules will govern so the employee could locate and review them").

Thus, for the foregoing reasons, the Court finds at most modest procedural unconscionability.

### 2. Substantive Unconscionability

Because the procedural unconscionability here is modest, Mr. Dalton is required to make a fairly strong showing of substantive unconscionability in order to avoid arbitration.

In his papers, Mr. Dalton makes two arguments in support of substantive unconscionability: (1) the requirement to arbitrate is not mutual but rather unilateral (*i.e.*, Mr. Dalton is forced to arbitrate, but not Ecothrift) and (2) Mr. Dalton would be forced to bear at least half the costs of arbitration.

#### a. Lack of Mutuality

Regarding (1), Mr. Dalton's argument is weak. As noted above, the arbitration provision states as follows:

> **5.  ARBITRATION.** Any dispute with the Company regarding the terms and conditions of Employee's hiring, employment, or termination shall be subject to binding arbitration to the maximum extent allowed by law, under terms and conditions which the parties may mutually agree upon, or if they are unable to agree, then pursuant to the Arbitration rules and process established by law at California [C]ode of Civil Procedure Section 1280 et. seq.

Clempson Decl., Ex. A (Empl. Agmt. ¶ 5). According to Mr. Dalton, the use of the phrase "[a]ny dispute *with* the Company" (emphasis added) shows that the requirement to arbitrate is not mutual: "[T]he only logical interpretation of the plain meaning of the use of 'with' is that the obligation applies to the Employee, not the Company. Indeed, it is nonsensical for the Company to have a dispute with itself which it is required to arbitrate." Opp'n at 6. Mr. Dalton contends

1    that, if there were true mutuality, then the arbitration provision would have referred to a dispute
2    *between* the employee and Ecothrift.
3        The problem with Mr. Dalton's position is that a dispute *with* Ecothrift simply means that
4    there is a disagreement between the employee and the company – that can be a disagreement based
5    on an affirmative claim brought by an employee *or* a disagreement based on an affirmative claim
6    brought Ecothrift.  That this was the intent of the phrase is confirmed by the employee declaration
7    at the end of the employment agreement which states: "I also understand *any employment dispute*
8    will be subject to binding arbitration."  Clempson Decl., Ex. A (last page of employment
9    agreement) (emphasis added).
10       At the hearing, Mr. Dalton modified his position somewhat, now arguing that there is a
11   lack of mutuality because the arbitration provisions refers to "[a]ny dispute with the Company
12   regarding the terms and conditions of Employee's *hiring, employment, or termination*."  Clempson
13   Decl., Ex. A (Empl. Agmt. ¶ 5) (emphasis added).  According to Mr. Dalton, disputes related to
14   hiring and termination are inherently claims that only an employee, not an employer, will bring.
15   Thus, implicitly, the arbitration provision must be deemed unilateral.
16       The Court is not persuaded.  While Mr. Dalton might have a stronger case for lack of
17   mutuality if the arbitration provision referred to, *e.g.*, hiring only, the provision expressly refers to
18   disputes regarding the terms and condition of employment.  This would encompass claims that
19   Ecothrift might bring against Mr. Dalton – for example, a claim for breach of rules of employment
20   resulting in loss to the employer.  Even if there were any uncertainty here, any ambiguity would be
21   eliminated by the employee declaration at the end of the employment agreement which refers to
22   "any employment dispute" being subject to arbitration.  Clempson Decl., Ex. A (last page of
23   employment agreement).
24       Mr. Dalton's reliance on *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107
25   (2004), is misplaced.  The facts in *Martinez* are easily distinguishable.  In *Martinez*, there was an
26   explicit carve-out (from arbitration) for claims most likely to be made by the employer, *i.e.*, claims
27   for injunctive or other equitable relief for unfair competition and for the unauthorized disclosure of
28   trade secrets or confidential information.  *See id.* at 115.  There is no comparable language in the

1  arbitration clause in the instant case.

2          b.        <u>Cost Splitting</u>

3  As for (2), the Court takes note, as an initial matter, that it is not clear that Mr. Dalton would have to bear half the costs of arbitration. As indicated above, the rules that will govern the arbitration are – as a first cut – those to which the parties mutually agree. Here, Ecothrift has offered to pay for the costs of arbitration and it would seem odd for Mr. Dalton to object to that offer.

Mr. Dalton points out that, if the parties did disagree, that would trigger the application of the rules provided for in the CAA. He further notes that, under the CAA, the default rule is that the parties share in the costs of arbitration (if the parties to arbitration do not otherwise agree). California Code of Civil Procedure § 1284.2 provides:

> Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit.

Cal. Code Civ. Proc. § 1284.2. While that provision for cost splitting is substantively unconscionable in the instant case, *see Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 110-111 (200) ("conclud[ing] that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court") (emphasis in original); *Martinez*, 118 Cal. App. 4th at 117 (stating that "[t]he mere inclusion of the costs provision in the arbitration agreement [which required splitting of costs] produces an unacceptable chilling effect" – *i.e.*, discouraging an employee from exercising the right of constitutional due process), as noted above, it does not come into play because the parties would presumably agree (pursuant to the terms of the arbitration clause) that Ecothrift will pay for the arbitration. The potential invocation of the default reference to § 1284.2 is thus speculative. The speculative effect is underscored by the possibility that such provision might be found unconscionable and severed from the clause. *See*

10

*Armendariz*, 24 Cal. 4th at 124 (noting that, where an arbitration agreement has more than one unlawful provision, "[s]uch multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage" – *i.e.*, the agreement "is permeated by an unlawful purpose").

### III.  CONCLUSION

For the foregoing reasons, the motion to compel arbitration is granted and this case is stayed pending resolution of the arbitration.

This order disposes of Docket No. 9.

**IT IS SO ORDERED**.

Dated: October 11, 2016

_____
EDWARD M. CHEN
United States District Judge

11